# United States Court of Appeals for the Federal Circuit

---

**ENTERGY NUCLEAR FITZPATRICK, LLC,
ENTERGY NUCLEAR INDIAN POINT 3, LLC,
AND ENTERGY NUCLEAR OPERATIONS, INC.,**
*Plaintiffs-Appellees,*

v.

**UNITED STATES,**
*Defendant-Appellant.*

---

2012-5059

---

Appeal from the United States Court of Federal Claims in case no. 03-CV-2627, Judge Edward J. Damich.

---

Decided: April 2, 2013

---

JAY E. SILBERG, Pillsbury Winthrop Shaw Pittman, LLP, of McLean, Virginia, argued for the plaintiffs-appellees. With him on the brief were ALEXANDER D. TOMASZCZUK and EVAN D. WESSER. Of counsel on the brief was L. JAGER SMITH, JR. Jager Smith LLC, of Jackson, Mississippi.

ANDREW P. AVERBACH, Senior Trial Counsel, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the

brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and HAROLD D. LESTER, JR., Assistant Director, MARIAN E. SULLIVAN, Senior Trial Counsel, LISA L. DONAHUE, and SCOTT SLATER, Trial Attorneys. Of counsel on the brief was JANE K. TAYLOR, Office of General Counsel, United States Department of Energy, of Washington, DC.

---

Before RADER, *Chief Judge*, LOURIE and REYNA, *Circuit Judges*.

RADER, *Chief Judge*.

This interlocutory appeal is the latest in a line of attempts by the government to raise the "unavoidable delays" defense in breach of contract actions stemming from its failure to accept Spent Nuclear Fuel (SNF) from the nation's nuclear utilities. In a combination of two decisions, the United States Court of Federal Claims struck the government's affirmative defense. *Entergy Nuclear FitzPatrick, LLC v. United States*, 93 Fed. Cl. 739, 745–46 (2010) (*Entergy FitzPatrick I*); *Entergy Nuclear FitzPatrick, LLC v. United States*, 101 Fed. Cl. 464, 472–74 (2011) (*Entergy FitzPatrick II*). Because the Court of Federal Claims correctly applied the *Nebraska Public Power* rule, this court affirms the decision to strike the government's unavoidable delays defense.

## I.

In early 1983, the Nuclear Waste Policy Act (NWPA) established a comprehensive scheme to accept and dispose of SNF and other high-level radioactive waste (HLW) generated from the operation of nuclear power plants. *See* 42 U.S.C. §§ 10101–10270. Addressing the "national problem" of storage and disposal of these materials, the Act imposed on the government the responsibility to provide permanent disposal, while the costs of that dis-

posal "should be the responsibility of the generators and owners of such waste and spent fuel." *Id.* § 10131(a). The Act also made the utilities responsible to provide and pay for SNF storage until the United States Department of Energy (DOE) accepts the material "in accordance with the provisions of this chapter." *Id.* § 10131(a)(5).

The NWPA authorized the Secretary of Energy to enter into contracts with nuclear utilities for the acceptance, transportation, and disposal of SNF in return for payment of fees by the utilities. *Id.* § 10222(a)(1). The Act set specific requirements for these contracts, including when DOE was to start accepting the SNF and other radioactive waste. Section 302(a)(5) of the NWPA requires:

Contracts entered into under this section shall provide that—

(A) following commencement of operation of a repository, the Secretary shall take title to the high-level radioactive waste or spent nuclear fuel involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent fuel; and

(B) in return for the payment of fees established by this section, the Secretary, beginning *not later than January 31, 1998*, will dispose of the high-level radioactive waste or spent nuclear fuel involved as provided in this subchapter.

42 U.S.C. § 10222(a)(5) (emphasis added).

Later, DOE promulgated a regulation containing a contract, known as the Standard Contract. Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, 48 Fed. Reg. 16,590 (Apr. 18, 1983) (codified at 10 C.F.R. § 961.11). In compliance with the statute, the Standard Contract states that DOE will begin acceptance of SNF "not later than January 31,

1998," in exchange for fees paid by the utilities. 10 C.F.R. § 961.11, Art. II.

The NWPA also provided that the Nuclear Regulatory Commission "shall not issue or renew a license" to any nuclear utility unless the utility has entered into a contract with DOE, or DOE certifies that good faith negotiations to enter such a contact are ongoing. 42 U.S.C. § 10222(b)(1)(A). As this court noted in *Maine Yankee*, the NWPA "effectively made entry into such contracts mandatory for the utilities." *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1337 (Fed. Cir. 2000) (*Maine Yankee*). As a result, the nation's nuclear utilities—including the Power Authority of the State of New York, the original owner of the Entergy nuclear power stations at issue here—entered into contracts with DOE and began making payments to DOE.

By 1994, DOE knew it would be unable to accept SNF by the January 31, 1998 deadline. It initiated a notice-and-comment proceeding to address its obligations under the NWPA. DOE opened the proceeding with its "Notice of Inquiry" on "Waste Acceptance Issues" stating its "preliminary finding" that DOE had "no statutory obligation to accept [SNF] beginning in 1998 in the absence of an operational repository or other facility constructed under the [NWPA]." 59 Fed. Reg. 27,007, 27,008 (May 25, 1994); *Indiana Michigan Power Co. v. Dep't of Energy*, 88 F.3d 1272, 1274 (D.C. Cir. 1996) (*Indiana Michigan*). In April 1995, DOE issued its "Final Interpretation" that acknowledged it would not begin accepting SNF by the January 31, 1998 deadline and took the position that it did not have an unconditional obligation to begin performance on that date. 60 Fed. Reg. 21,793, 21,794–95 (May 3, 1995). A number of parties petitioned the United States Court of Appeals for the District of Columbia for review of the Final Interpretation.

The D.C. Circuit held "that section 302(a)(5)(B) [of the NWPA] creates an obligation in DOE, reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998." *Indiana Michigan*, 88 F.3d at 1277. The D.C. Circuit found that DOE's statutory obligation to meet the 1998 deadline was "without qualification or condition." *Id.* at 1276; *Northern States Power Co. v. Dep't of Energy*, 128 F.3d 754, 757 (D.C. Cir. 1997) (*Northern States*). Contrary to that ruling, and without seeking rehearing or further review by the Supreme Court, DOE informed the utilities that it would not begin accepting nuclear waste by the 1998 statutory deadline. *Northern States*, 128 F.3d at 757. The utilities returned to the D.C. Circuit seeking a writ of mandamus compelling DOE to begin accepting SNF on time. While that case was pending, DOE asserted that under the Standard Contract's "Unavoidable Delays" clause, it was not obligated to provide a financial remedy for the delay in performance. *Id.* Article IX of the Standard Contract contains provisions for "Delays." Section A covers "Unavoidable Delays by Purchaser or DOE" and precludes a party's liability for "damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform." 10 C.F.R. § 961.11, Art. IX(A).

The D.C. Circuit denied the specific writ requested by the utilities. While acknowledging that DOE's approach toward contractual remedies was inconsistent with the NWPA and the court's holding in *Indiana Michigan*, the D.C. Circuit found that the Standard Contract "provides a potentially adequate remedy if DOE fails to fulfill its obligations by the deadline." *Northern States*, 128 F.3d at 756. In doing so, the D.C. Circuit rejected DOE's argument that it was not obligated to accept nuclear waste because its failure was "unavoidable" within the meaning

of the unavoidable delays clause. *Id.* at 757. Reaffirming that "the NWPA imposes an unconditional duty on DOE to take the materials by 1998," the D.C. Circuit issued a writ of mandamus "precluding DOE from advancing any construction of the Standard Contract that would excuse its delinquency on the ground that it has not yet established a permanent repository or an interim storage program." *Id.* at 756. Accordingly, our sister circuit ordered DOE "to proceed with contractual remedies in a manner consistent with NWPA's command that it undertake an unconditional obligation to begin disposal of the SNF by January 31, 1998." *Id.* at 760. The D.C. Circuit also issued a post-judgment order clarifying the scope of its *Northern States* decision. *Northern States Power Co. v. Dep't of Energy*, No. 97-1064, 1998 WL 276581 (D.C. Cir. May 5, 1998). The court explained that it had "barred the DOE from interpreting the [Standard] Contract as imposing only a contingent disposal obligation; such an interpretation, we ruled, would place the DOE in violation of its statutory duties under the [NWPA], which required it to undertake an unconditional obligation." *Id.* at *1.

To date, the utilities continue to make payments totaling hundreds of millions of dollars each year, even though DOE has yet to accept any nuclear waste. So far, dozens of Standard Contract holders have sued the government in the Court of Federal Claims seeking damages for DOE's delay in accepting SNF. This court has addressed the Standard Contract on numerous occasions and held that the government's failure to begin accepting SNF as of January 31, 1998 is a partial breach of the contract. *See, e.g.*, *Maine Yankee*, 225 F.3d at 1342–43.

This court, sitting en banc, addressed the D.C. Circuit's *Indiana Michigan* and *Northern States* decisions in 2010. *Nebraska Public Power Dist. v. United States*, 590 F.3d 1357 (Fed. Cir. 2010) (en banc) (*Nebraska Public Power*). In *Nebraska Public Power*, the government

asserted the unavoidable delays defense against a claim for damages resulting from DOE's failure to accept nuclear waste as of January 31, 1998. First, this court confirmed the D.C. Circuit's jurisdiction over the utilities' statutory claim arising under section 302 of the NWPA. *Id.* at 1376. The D.C. Circuit's mandamus order focused on statutory interpretation and did not impermissibly trespass upon the jurisdiction of the Court of Federal Claims to determine the parties' contractual rights. *Id.* Accordingly, the D.C. Circuit's mandamus order was afforded res judicata effect. *Id.*

The *Nebraska Public Power* opinion characterized the D.C. Circuit's opinion as precluding the government's use of the unavoidable delays defense to nullify its statutory obligations. This court explained that as "a matter of statutory construction, the D.C. Circuit interpreted DOE's obligation to begin accepting nuclear waste in 1998 as unconditional." *Id.* at 1375. Thus, the D.C. Circuit's holding that "the government's failure to have a repository ready by January 31, 1998, could not be excused as unavoidable delay," was based on its interpretation of the NWPA. *Id.*

In 2003, Entergy Nuclear FitzPatrick, LLC, Entergy Nuclear Indian Point 3, LLC, and Entergy Nuclear Operations, Inc. (collectively Entergy) sued the United States asserting that DOE partially breached contracts through its failure to accept SNF beginning on January 31, 1998. *Entergy FitzPatrick I*, 93 Fed. Cl. at 741. Similar to other utilities, Entergy claimed the government's breach caused it to "incur substantial additional costs" associated with their SNF storage. *Id.* After a five year stay, the government answered Entergy's complaint with an affirmative defense based upon the unavoidable delays clause in the Standard Contract.

The Court of Federal Claims granted Entergy's motion to strike this defense based on the writ of mandamus issued by the D.C. Circuit in *Northern States*, which this court previously held was entitled to res judicata effect in *Nebraska Public Power*. *Id.* at 745–46. The Energy Department sought reconsideration based on this court's later decision in *Southern Nuclear Operating Co. v. United States*, 637 F.3d 1297 (Fed. Cir. 2011) (*Southern Nuclear*). According to the government, *Southern Nuclear* held that the *Northern States* writ of mandamus does not bar assertion of the unavoidable delays defense to limit damages in the Court of Federal Claims. *Entergy Fitzpatrick II*, 101 Fed. Cl. at 469. The trial court denied the motion for reconsideration and *sua sponte* certified the question for interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(2). *Id.* at 472–74. This court granted the petition for interlocutory appeal. *Entergy Nuclear Fitzpatrick, LLC v. United States*, 449 F. App'x 947 (Fed. Cir. 2012).

## II.

This court reviews legal conclusions of the Court of Federal Claims, including contract interpretation, de novo. *Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268, 1272 (Fed. Cir. 2008). This court reviews the trial court's decision on reconsideration for an abuse of discretion. *Yuba Natural Resources, Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990).

The government's appeal challenges the scope of this court's en banc *Nebraska Public Power* decision. The government avers it may raise the Standard Contract's unavoidable delays clause as a defense limiting its damages for failing to accept SNF starting in January 1998. It argues, based on this court's later *Southern Nuclear* panel decision, that *Nebraska Public Power* only prevents the unavoidable delays clause as a defense to liability.

In *Southern Nuclear*, this court affirmed a Court of Federal Claims' holding that the government waived the unavoidable delays defense by raising it post-trial. *Southern Nuclear*, 637 F.3d at 1306. In *Southern Nuclear*, the government argued that it reasonably believed it was barred by the *Northern States* mandamus order from raising the unavoidable delays defense, thus it could not have voluntarily or knowingly waived the defense at trial. *Id.* at 1305. This court found that argument unpersuasive and stated:

> In our en banc decision in *Nebraska Public Power*, we did not suggest that the District of Columbia Circuit's decisions in any way foreclosed arguing in favor of the defense in the Claims Court. Indeed, we considered the government's argument and held that the District of Columbia Circuit had jurisdiction to enter the mandamus order and that its decision in *Northern States* was entitled to res judicata effect on the issue of liability but that it did not "direct the implementation of any remedy."

*Id.* at 1306 (citation omitted). Yet, on the merits, the panel concluded that the argument was waived:

> Because the government failed to raise the unavoidable delays clause here and because this failure was not compelled by the District of Columbia Circuit's mandamus in *Northern States*, it has waived the defense. We need not reach the question posed by the *Nebraska Public Power* concurrence as to whether the 'unavoidable delays' clause could provide a defense to expectancy damages.

*Id.* at 1306.

In this case, the government argues that *Southern Nuclear* interpreted *Nebraska Public Power* and "expressly held that, notwithstanding the mandamus order issued by the [D.C. Circuit] in *Northern States*, the United States has the right to invoke the [unavoidable delays] clause as a defense to damages." Appellant's Br. at 14.

The government's argument is an extension of the *Nebraska Public Power* concurrence, which responded to the lone dissent in that opinion. The *Nebraska Public Power* dissent interpreted "the order in mandamus [to be] clearly directed to the interpretation of the Standard Contract (not the NWPA) and is thus not only outside the jurisdiction of the D.C. Circuit, but also infringes upon the Court of Federal Claims's exclusive Tucker Act jurisdiction over the administration of contract disputes." *Nebraska Public Power*, 590 F.3d at 1377 (Gajarsa, J., dissenting). The dissent further elaborated that "the majority cannot avoid the obvious legal conclusion that this affects the damages imposed upon the United States." *Id.* at 1381. Put another way, "the D.C. Circuit ordered what is, in effect, compensatory relief. . . . The D.C. Circuit exceeded its jurisdiction in [precluding the DOE from relying on the unavoidable delays clause] and by its writ thus obligated the DOE to pay compensatory damages in a subsequent breach of contract action." *Id.* at 1384. Nonetheless, the remainder of the en banc court upheld the mandamus order based on the D.C. Circuit's authority to construe the NWPA and to direct DOE to comply with its statutory obligations. *Id.* at 1376.

In response, the *Nebraska Public Power* concurrence, without citing to specific language in either the majority opinion or *Northern States*, contended that these cases do not "order[] the government to pay money damages (expectancy damages) for breach of the agreement." *Id.* at 1377 (Dyk, J., concurring). "Although I read the majority as establishing government liability, it remains open for

the government to argue that the Unavoidable Delays clause bars a damages award (as opposed to some other contractual remedy such as restitution)." *Id.*

In contrast, the *Nebraska Public Power* majority held that the D.C. Circuit's "order did not address any issue of contract breach, direct the implementation of any remedy, or construe any contract defense, except to the extent that the proposed interpretation of the contract would conflict with the statutory directive in section 302(a)(5)." *Id.* at 1376. That statutory directive is the performance commencement date of "not later than January 31, 1998." *See* 42 U.S.C. § 10222 (a)(5)(B). "Beyond that implementation of its statutory ruling, the D.C. Circuit properly left all issues of contract breach, enforcement, and remedy to be determined in the litigation before the Court of Federal Claims." *Nebraska Public Power*, 590 F.3d at 1376.

In this case, the trial court recognized in its motion for reconsideration that "[i]mplicit in the [*Southern Nuclear]* panel's holding is that the unavoidable delays defense could have been raised despite the mandamus (but it wasn't, so therefore it was waived)." *Entergy FitzPatrick II*, 101 Fed. Cl. at 469. Nonetheless, the trial court concluded that under the controlling *Nebraska Public Power* en banc decision, the government may not invoke an unavoidable delays defense.

The government differentiates between asserting the unavoidable delays clause as a defense to *liability* and asserting this clause as a defense to *damages*. It does not dispute that *Nebraska Public Power* and the *Northern States* mandamus preclude the clause as a defense to liability for failing to begin accepting SNF on January 31, 1998. Instead, the government contends it is not precluded from asserting the clause as a defense to monetary damages arising from that breach. Appellant's Br. at 1.

In supplemental briefing before the trial court in this case, the government outlined its intended use of the defense. It indicated that "the United States does not propose to use the unavoidable delays defense as a get-out-of-jail-free card" concerning liability. *Entergy Fitz-Patrick II*, 101 Fed. Cl. at 465. Rather, the government intends to use the defense to "circumscribe[ ] the amount of expectation damages." *Id.* In particular, it argues that costs incurred by Entergy from the state of Nevada's efforts to prevent licensing of a repository are covered by the unavoidable delays clause. "[Entergy's] recovery should be reduced only by the amount that [Entergy] would have expended had the United States accepted SNF on a schedule delayed only by the length of time attributable to Nevada's dilatory conduct." *Id.* The government specifically asserts, "the *unavoidable* delays that DOE has encountered as a result of the [sic] Nevada's conduct would have delayed the commencement of SNF acceptance by at least 31 months, or from January 30, 1998 through at least August 2000." *Id.* (emphasis in original). For that reason, the government contends that Entergy's damages for SNF storage resulting from the government's delay in performance "did not commence until September 2000—the earliest that performance could have begun given the Unavoidable Delays that DOE encountered." *Id.*

The government's attempt to separate liability and damages highlights the reason that *Northern States* and *Nebraska Public Power* clearly control the issue. By the government's admission, the functional result of the unavoidable delays clause releases the government from its statutory burden of performance by January 1998. This it may not do.

In *Nebraska Public Power,* this court held that the D.C. Circuit had jurisdiction to review the government's compliance with the NWPA and that the *Northern States*

writ of mandamus should be afforded res judicata effect. *Nebraska Public Power*, 590 F.3d at 1376. In *Northern States*, the D.C. Circuit ordered:

> DOE to proceed with contractual remedies in a manner consistent with NWPA's command that it undertake an *unconditional obligation to begin disposal of the SNF by January 31, 1998*. More specifically, *we preclude DOE from concluding that its delay is unavoidable* on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim.

*Northern States*, 128 F.3d at 760 (emphasis added). For the second time, the D.C. Circuit expressly rejected DOE's argument that "it does not have responsibility for the costs resulting from its failure to [begin accepting SNF by January 31, 1998] because it does not have an operational repository or other facility." *Id.* The *Northern States* court further elaborated "DOE cannot now render its obligation contingent, and *free itself of the costs caused by its delay*, by advancing the same failed position that we rejected [in *Indiana Michigan*]." *Id.* (emphasis added). The D.C. Circuit's mandamus order was unmistakably directed at both liability for and damages resulting from DOE's failure to meet its statutory obligation. The mandamus order "preclude[d] DOE from advancing any construction of the Standard Contract that would excuse its delinquency on the ground that it has not yet established a permanent repository or an interim storage program." *Id.* at 756.

This court addressed the scope of the *Northern States* mandamus order in *Nebraska Public Power*. This court explained that "based on its interpretation of the NWPA, the D.C. Circuit held that the government's failure to have a repository ready by January 31, 1998, *could not be*

*excused as unavoidable delay.*" *Nebraska Public Power*, 590 F.3d at 1383 (emphasis added). This court further held, "[t]he D.C. Circuit's order prohibited the government from using contract interpretation as a means of avoiding its statutory obligations under section 302, which the D.C. Circuit was authorized to do as a means of enforcing the statutory claim that was brought before it in the *Indiana Michigan* case." *Id.* at 1365. As this court en banc elaborated, the D.C. Circuit issued its mandamus order to "bar DOE from doing under the rubric of contract interpretation what section 302(a)(5)(B) prohibited as a matter of statutory compulsion." *Id.* at 1372. Moreover, the en banc court expressly acknowledged that, although the D.C. Circuit's writ was not itself "an award of damages," the relief granted "could affect subsequent contract litigation that in turn could result in an award for damages," *id.* at 1371 n.7, and that "the D.C. Circuit's remedial order would affect later litigation over contract-based rights." *Id.* at 1376. The mandamus order's application to damages was thus contemplated in this court's *Nebraska Public Power* decision.

In sum, *Nebraska Public Power's* holding that the D.C. Circuit's mandamus order is entitled to res judicata effect precludes use of the unavoidable delays clause as a defense to both liability and damages resulting DOE's failure to meet the January 1998 deadline. Even if there were a contrary "implicit" finding in *Southern Nuclear*, the en banc *Nebraska Public Power* decision controls. *See Texas Am. Oil Corp. v. Dep't of Energy*, 44 F.3d 1557, 1561 (Fed. Cir. 1995) (en banc). The government had an unconditional statutory obligation to accept SNF beginning by January 31, 1998. 42 USC § 10222 (a)(5)(B); *Nebraska Public Power*, 590 F.3d at 1375–76; *Northern States*, 128 F.3d at 760.

Additionally, the government's acceptance of liability for breaching its statutory obligation to accept SNF is

inconsistent with its contention that the unavoidable delays clause allows a reduction in damages resulting from its failure to begin acceptance of SNF in January 1998. This court has expressly established that breach of the Standard Contract began on January 31, 1998. *Maine Yankee*, 225 F.3d at 1341–42. In contrast, as the Court of Federal Claims has noted, if performance is excused under the unavoidable delays clause until a date after January 1998, then there is no basis for determining liability for partial breach beginning January 31, 1998. *See Entergy FitzPatrick II*, 101 Fed. Cl. at 471–472; *see also Portland Gen. Elec. Co. v. United States*, 100 Fed. Cl. 46, 51 (2011) ("The two concepts are mutually exclusive; if damages do not accrue, it is because performance is excused, i.e., there is no breach.").

## III.

For the forgoing reasons, the trial court's denial of the motion to reconsider is affirmed.

**AFFIRMED**